## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**FRANK R. ZOKAITES,**

       Plaintiff,

  vs.

**S&T BANCORP, INC.,**

       Defendant.

_____/

## COMPLAINT FOR EQUITABLE
## RELIEF AND FOR DAMAGES:

AND NOW comes the Plaintiff, Frank R. Zokaites ("Zokaites"), *Pro* Se, and files

the following Complaint in Civil Action as follows:

### The Parties:

1.      The Plaintiff, Frank R. Zokaites ("Zokaites"), is a resident of Broward

County, Florida and has been so since 2008.

2.      The Defendant, S&T Bancorp, Inc., t/d/b/a S&T Bank ("S&T Bank") is,

upon information and belief, a Pennsylvania banking corporation with a corporate

address of 800 Philadelphia Street, Indiana, Pa 15701 and a second address of 12550

Perry Highway, Wexford, PA 15090.

### Jurisdiction and Venue:

3.      This Court has original diversity jurisdiction under 28 U.S.C. § 1332

because the parties are citizens of different States and the amount in controversy exceeds

$75,000, exclusive of interest, fees and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The

Defendants have transacted affairs in this District, the claims set forth herein have

occurred in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, and a substantial part of property that is the subject of the action is located in this District.

### **Factual Allegations:**

5.      On February 23, 2005, Zokaites, Jay Fairbrother ("Fairbrother") and Ron Sofranko ("Sofranko") executed a purchase agreement in Florida to purchase a residential condominium unit located at 801 Briny Avenue, Unit 1401, Pompano Beach, Florida (the "property"). The purchase price for the property was $1,080,000. The purchase agreement required an initial deposit of $216,000 that was paid. As more fully set forth herein, this deposit became forfeitable and non-refundable.

6.      The agreement between Zokaites, Fairbrother and Sofranko was that each of them and their families would share equally in the personal use, pleasure, costs, expenses, and mortgage payments associated with the purchase of the property.

7.      On April 18, 2008, Zokaites, Fairbrother, and Sofranko formed a limited liability company called Sonata Florida, LLC ("Sonata Florida") in which each of these individuals were equal members. The members were not subject to any capital contribution requirement in the operating agreement. The purchase agreement was assigned to Sonata Florida. The operating agreement memorialized the parties' agreement to equally share in the personal use, costs and expenses associated with the property.

8.      In order to finance the purchase of the property, Sofranko, on behalf of himself, Zokaites and Fairbrother approached S&T Bank about obtaining a mortgage loan on the property. Sofranko was the primary contact person with S&T Bank.

9.     During discussions with Vince Lazor, the loan officer at S&T Bank, Zokaites specifically requested Mr. Lazor to pay particular attention to the underwriting of the credit on Messrs. Fairbrother and Sofranko to ensure they were credit worthy and had sufficient income to pay their proportionate share of the mortgage and other expenses associated with the property. Zokaites made this request because he did not have access to the financial statements or tax returns for Fairbrother or Sofranko and also because he did not have the capabilities to perform such an underwriting as a bank would have.

10.     Zokaites' request to S&T concerning the underwriting of Fairbrother and Sofranko was a material condition to Zokaites going forward to obtain a loan with S&T Bank and ultimately the purchase of the property.

11.     Based on Zokaites' specific request, Mr. Lazor agreed to pay particular attention to the underwriting of Sofranko and Fairbrother and to ensure they had good credit and sufficient income to pay their proportionate one-third share of the mortgage and other costs and expenses associated with the property.

12.     S&T Bank ultimately approved a loan for the purchase of the property. The loan amount was for $864,000. The borrower was Sonata Florida and the Plaintiff, Fairbrother and Sofranko were the guarantors.

13.     The conditions to closing the loan included S&T obtaining an appraisal on the property that was satisfactory to S&T.

14.     Mr. Lazor specifically told the Plaintiff that he had completed the credit underwriting for Messrs. Fairbrother and Sofranko and that it was his determination that they were both credit worthy and had sufficient income to pay their proportionate share of the monthly expenses including the monthly mortgage payments. Zokaites reasonably

3

relied on Mr. Lazor's approval of Messrs. Fairbrother and Sofranko ability to pay their share of the monthly expenses and proceeded to a closing on the loan and the property.

15.      S&T Bank hired an appraiser named Brian Cohee of Financial Dimensions who has an address of 7072 San Sebastian Circle, Boca Raton, FL 33433 appraise the property. Mr. Cohee's appraisal report was effective as of May 8, 2008 and appraised the property at $1,080,000 which, coincidently, was exactly equal to the purchase price (the "May 8, 2008 Appraisal").

16.      Closing on the property was set by the seller in December, 2007 for January, 2008 however the seller did not obtain a temporary occupancy certificate until March 30, 2008. Because Sonata Florida was required to then close and did not close until July 30, 2008, the $216,000 hand money became forfeitable and non-refundable either in February, 2008 or in April, 2008.

17.      Closing on the loan and the purchase of the property occurred on July 30, 2008.

18.      The HUD-1 Settlement Statement reflected that the purchasers received cash back from the closing in the amount of $162,000 that was called a "decorator's allowance". What this means is that the unit as purchased was an incomplete unit with bare bulb light fixtures, concrete floors, no tile boards and only a primer coat of paint. In short, the property was an unfinished, unlivable unit. (A preliminary HUD-1 dated July 8, 2008 that was sent to S&T Bank reflected a flooring credit of only $42,000).

19.      Even a cursory review of the agreement of sale reflecting no flooring credit to the preliminary HUD-1 showing the $42,000 flooring credit and then to the final HUD-1 showing the $162,000 flooring credit should have triggered questions by S&T

4

Bank and Mr. Cohee about the real value of the property. These discounts reflect a reduction in value of 4% for the initial $42,000 credit up to a 15% reduction in value for the $162,000 credit.

20.     The final HUD-1 Settlement Statement also reflected a re-credit to the purchase price for the forfeited hand money of $216,000.

21.     Plaintiff, Fairbrother and Sofranko were able to negotiate with the seller of the property the $162,000 cash discount for the decorator's allowance and were also able to negotiate a credit to the purchase price for the $216,000 hand money even though it had been forfeited. The seller agreed to these credits even though it was under no obligation to do so. S&T Bank was fully aware of these events. The $162,000 decorator's allowance represented 15% of the purchase price and the $216,000 forfeited hand money represented 20% of the purchase price for a total discount of 35%.

22.     The real purchase price for the property was therefore:

| | |
|---|---|
| Purchase Price per Agreement of Sale | $1,080,000 |
| Less Forfeited hand Money | ($ 216,000) |
| Less Decorator's Allowance Cash | ($ 162,000) |
| Real Purchase Price | $ 712,000 |

23.     All of the discounts and price reductions listed above were fully disclosed to and approved by S&T prior to the loan closing.

24.     The May 8, 2008 Appraisal noted that the property was fully completed but in another part of the report stated that the floor coverings were not completed except that the bathrooms had marble floors.

25.      The May 8, 2008 Appraisal included four comparable properties in which Mr. Cohee tried to justify the value he assigned to the property to equal the purchase price. Upon information and belief, these other properties were completed units and included floor coverings throughout.

26.      After closing, the Plaintiff paid approximately $12,765 for labor and $14,107 in materials to install the floor coverings throughout the property.

27.      S&T Bank failed to tell Mr. Cohee about the $162,000 cash decorator's allowance that was paid to the Plaintiff, Fairbrother and Sofranko at closing and also failed to mention the re-crediting of the $216,000 forfeited hand money. These payments therefore reduced the purchase price for the property and reduced the value of the property from the May 8, 2008 Appraisal. The appraised value of the property was therefore inflated and S&T Bank knowingly overfunded the mortgage loan.

28.      In fact, the value of the property was inflated as evidenced by another appraisal performed by Mr. Cohee less than 21 months later on February 2, 2010 (the "February 2, 2010 Appraisal"). In this appraisal, Mr. Cohee valued the property at $660,000 as-is and at a further reduced value of $624,000 based on a six month sale value. This appraisal was about 42% less than the first appraisal, or a reduction in value of 24% per year.

29.      Equally egregious to S&T Bank's acceptance of the May 8, 2009 appraisal was the statement in the appraisal that the market value of the properties within the neighborhood including the purchased unit were declining.

30.      Outrageously, Plaintiff ultimately became aware of a series of emails between Mr. Lazor and Scott Getsy of Financial Dimensions. In these emails, Messrs.

Lazor and Getsy noted that only one unit in the entire 64 unit building had closed. Messrs. Lazor and Getsy then conspired to delay the date of the appraisal until May 1, 2008 to allow another unit to close on April 30, 2008 which, according to these gentlemen "Basically waiting helps to provide the best sales available for this appraisal".

31.     Upon information and belief, sales of most or all of the units in the building had rebates, discounts and the like thereby further devaluing the value of the property and further inflating the May 8 Appraisal. Mr. Cohee failed to take this issue into account as well in his appraisal.

32.     The $162,000 decorator's allowance paid in cash at the closing was used by the Plaintiff, Fairbrother and Sofranko to pay the monthly mortgage payments to S&T Bank.

33.     The decorator's allowance money eventually ran out. At that point and continuing until the present, Zokaites has paid most of the expenses on the property including the majority of the monthly mortgage payments to S&T Bank because neither Fairbrother nor Sofranko have sufficient cash income to pay these expenses.

34.     Zokaites stopped advancing money on behalf of Fairbrother and Sofranko. Accordingly, the monthly mortgage payments to S&T Bank have not been paid since the due date for the September 30, 2010 payment.

35.     On November 16, 2010, S&T Bank directed its counsel to send a ten day notice of default to the Plaintiff, Fairbrother and Sofranko demanding that they pay S&T Bank in full for the loan or they would initiate legal action that would include the filing of a confession of judgment. A true and correct copy of this demand letter is attached hereto as Exhibit "A".

36.     Upon information and belief, because of the serious improprieties surrounding S&T Bank's conspiracy with Mr. Cohee in intentionally inflating the value of the property and lending more on the property than its true value, S&T Bank may have violated several provisions of their internal rules along with the federal and state banking laws. Should the FDIC auditors and other governmental auditors become aware of these improprieties, serious fines and other sanctions may result.

**Count I**
**<u>Breach of Fiduciary Duty:</u>**

37.     Plaintiff incorporates the preceding paragraphs as though fully set forth at length herein.

38.     S&T Bank had a fiduciary duty of loyalty it owed to the Plaintiff by virtue of its relationship as a lender.

39.     S&T Bank breached its fiduciary duty owed to the Plaintiff by failing to properly perform an underwriting of the credit on Fairbrother and Sofranko that included their ability to pay their monthly share of the mortgage payments and expenses on the property. Zokaites relied on S&T Bank's promises and assurances they underwrite the credit by agreeing to go forward with the purchase of the property and execution of the guaranty that S&T Bank demanded the Plaintiff sign. In fact, and prior to the closing, Mr. Lazor told the Plaintiff that Fairbrother and Sofranko were credit worthy and capable of paying their share when in fact they weren't.

40.     S&T Bank further breached its fiduciary duty it owed to the Plaintiff by allowing the appraisal on the property to be inflated because of the decorator's allowance and the non-refundable hand money thereby resulting in overfunding the mortgage loan.

Further, S&T Bank conspired with the appraiser it hired to further inflate the appraisal by delaying the date of the appraisal to allow another unit to close.

41.     S&T Bank further breached its fiduciary duties it owed to the Plaintiff by even accepting the May 8, 2008 appraisal at all as a basis for making the mortgage loan because of the clear statement in the appraisal that the market value of the properties in the neighborhood were declining which includes the purchased unit. Because of such statement, S&T Bank should never have made the mortgage loan in the first place.

42.     Upon information and belief, S&T Bank either intentionally or negligently overfunded the mortgage loan or made the loan at all solely to generate fees and interest from the Plaintiff.

43.     Upon information and belief, Mr. Lazor made the false representations to Plaintiff about the credit worthiness of Sofranko and Fairbrother and committed the wrongful acts surrounding the appraisal and closing to collect commissions, bonuses and/or improve his standing with S&T Bank for closing on an almost $1 million loan.

44.     As a direct and proximate result of S&T Bank's breach of its fiduciary duty, the Plaintiff has sustained damages in an amount equal to the amount of monies he has expended in excess of his previously forfeited hand money.

45.     As a further direct and proximate result of S&T Bank's breach of fiduciary duty, should S&T Bank proceed to collect on its guarantee and/or confession of judgment against Zokaites, and because neither Fairbrother nor Sofranko have any money, Zokaites may have to shoulder the entire unpaid loan balance thereby constituting additional damages.

46.     S&T Bank's wrongful conduct set forth herein was intentional, willful and wanton or was made in reckless disregard of the harm it would cause Plaintiff thereby entitling the Plaintiff to an award of punitive damages.

WHEREFORE, the Plaintiff, Frank R. Zokaites, respectfully requests judgment in his favor and against the Defendant, S&T Bancorp, in an amount in excess of $25,000 plus punitive damages, interest and costs.

## Count II
## Fraud and Misrepresentation:

47.     Plaintiff incorporates the preceding paragraphs as though fully set forth at length herein.

48.     As set forth herein, the Defendant made or caused to be made numerous material misrepresentations to the Plaintiff including the following:

(a)     misrepresenting the underwriting of the credit to ensure that Fairbrother and Sofranko had sufficient income to pay their share of the monthly expenses of the property including the monthly mortgage payments when they did not have sufficient income;

(b)     failing to obtain an accurate appraisal on the property by failing to inform the appraiser of the decorator's allowance that was paid in cash at the closing (and used to pay the Defendant's monthly mortgage payments) instead of being escrowed to improve the property to support the value of the property; failing to inform the appraiser of the forfeited hand money; and intentionally conspiring with the appraiser by delaying the date of the appraisal to allow time for another unit to close; all of which had the result of inflating the value and inflating the mortgage loan amount lent by the Defendant; and

(c)     proceeding to close on the property when the appraisal clearly stated the market value of the properties in the neighborhood including the purchased unit were declining. This statement made it impossible to establish a legally required value for the property thereby making the loan illegal.

49.     The Defendant's material misrepresentations were intended to induce the Plaintiff to believe that Fairbrother and Sofranko had sufficient income to pay their share of the expenses on the property and were further intended to induce the Plaintiff to believe that the value of the property was equal to the purchase price and that the loan was appropriate for the alleged value.

50.     The Plaintiff justifiably relied on the Defendant's misrepresentations to his detriment by proceeding to close on the property and to execute the guaranty that was joint and severable.

51.     Upon information belief, Mr. Lazor made the false representations to Plaintiff about the credit worthiness of Sofranko and Fairbrother and committed the wrongful acts surrounding the appraisal and closing to collect commissions, bonuses and/or improve his standing with S&T Bank for closing on an almost $1 million loan.

52.     As a direct and proximate result of S&T Bank's fraud, the Plaintiff has sustained damages in an amount equal to the amount of monies he has expended in excess of his previously forfeited hand money.

53.     As a further direct and proximate result of S&T Bank's fraud, should S&T Bank proceed with a default on its mortgage loan, and because neither Fairbrother nor Sofranko have any money, Zokaites may have to shoulder the entire unpaid loan balance thereby constituting additional damages.

54.     S&T Bank's fraudulent conduct set forth herein was intentional, willful and wanton or was made in reckless disregard of the harm it would cause Plaintiff thereby entitling the Plaintiff to an award of punitive damages.

WHEREFORE, the Plaintiff, Frank R. Zokaites, respectfully requests judgment in his favor and against the Defendant, S&T Bancorp, in an amount in excess of $25,000 plus punitive damages, interest and costs.

## Count III
## Defamation:

55.      Plaintiff incorporates the preceding paragraphs as though fully set forth at length herein.

56.      As set forth in Count V herein, Plaintiff believes and therefore asserts that the guaranty is void and unenforceable against him. Moreover, S&T Bank filed an unlawful complaint in confession of judgment against the Plaintiff.

57.      The complaint in confession of judgment constitutes a lien that is a matter of public record. Further, and upon information and belief, S&T Bank has or will report the judgment and other derogatory information against the Plaintiff with one or more national credit bureau reporting agencies.

58.      The public recording of a judgment and reporting derogatory information to credit reporting agencies are disparaging remarks about the Plaintiff that are false. These defamatory utterances are made to the public at large.

59.      The statements, without limitation as to the entire scope of defamatory and false meanings contained therein, were intended to and will in fact convey to the public at large, either expressly or by implication, that the Plaintiff is not credit worthy, is an unsavory character in his business dealings, that the Plaintiff was financially unsound, and that the Plaintiff's business associates and the public at large should refrain from doing business with the Plaintiff.

60.     By reason of the above false statements, the Plaintiff will be greatly hurt and injured in his good name and reputation, and has been disgraced and is looked at with disrepute by his business associates and other persons ever since the utterances of these false, scandalous and defamatory words.

61.     As a further result of the above, the speaking and publication of the false and defamatory words will cause many persons who used to have dealings and business with the Plaintiff in his lawful trade and business to refuse to deal with or do business with the Plaintiff.

62.     The Defendant's statements are actionable per se and slanderous per se.

63.     The Defendant's publication of these false statements were made with malice or in reckless disregard to the truth or falsity of the defamatory statements. In the alternative, the Defendant's negligently made these false statements as to their truth or falsity.

64.     As a direct and proximate result of the false, misleading and malicious statements to the Plaintiff's business associates, the Plaintiff has suffered damages and continues to suffer serious and irreparable injury to his good name and reputation.

65.     The statements made by the Defendant were intentional, willful and malicious, and were made with knowledge of their falsity or with reckless disregard for their truth or falsity thus entitling the Plaintiff to an award of punitive damages.

WHEREFORE, the Plaintiff demands judgment in its favor and against the Defendant in an amount in excess of $25,000, together with punitive damages, costs, interest and attorney's fees.

13

## Count IV
## Invasion of Privacy:

66.     Plaintiff incorporates the preceding paragraphs as though fully set forth at length herein.

67.     The complaint in confession of judgment constitutes a lien that is a matter of public record. Further, and upon information and belief, S&T Bank has or will report the judgment and other derogatory information against the Plaintiff with one or more national credit bureau reporting agencies.

68.     The public recording of a judgment and reporting derogatory information to credit reporting agencies are disparaging remarks about the Plaintiff that are false.

69.     The public recording of the judgment and lien and dissemination of derogatory information to credit reporting agencies are being published to the public at large.

70.     The public recording of the judgment and lien and any dissemination of the derogatory information to credit reporting agencies are private facts concerning the Plaintiff that places him in disregard to the public.

71.     The false publication of these private facts are highly offensive to the Plaintiff and to any reasonable person and are not of legitimate concern to the public.

72.     The false publication of these private facts places the Plaintiff in a false light and are an invasion of his privacy.

73.     The false publication of these private facts were intended to and will in fact convey to the public, either expressly or by implication, that the Plaintiff is not credit worthy, is an unsavory character in his business dealings, that Plaintiff is financially

14

unsound, and that the Plaintiff's business associates and others should refrain from doing business with the Plaintiff.

74.     The Defendant's publication of these false statements were made with malice or in reckless disregard to the truth or falsity of these statements and without regard to the privacy of the Plaintiff.

75.     As a direct and proximate result of the wrongful publication of these private facts that have placed the Plaintiff in a false light and have invaded his privacy, the Plaintiff has sustained damages to his good name and reputation, to his credit worthiness, has been disgraced, and is looked at with disrepute by his business associates.

76.     As a direct and proximate result of the false, misleading and malicious publication of these private facts, the Plaintiff has suffered damages and continues to suffer serious and irreparable injury to his good name, reputation, and credit worthiness.

77.     As a further direct and proximate result of the false, misleading and malicious publication of these private facts, the Plaintiff has and will suffer severe emotional distress.

78.     The Defendant's wrongful conduct was intentional, willful and malicious, and was made with knowledge of their falsity or with reckless disregard for their truth or falsity thus entitling the Plaintiff to an award of punitive damages.

WHEREFORE, the Plaintiff demands judgment in its favor and against the Defendant in an amount in excess of $25,000, together with punitive damages, costs, interest and attorney's fees.

## Count V
## Action for Declaratory Judgment:

79.     Plaintiff incorporates the preceding paragraphs as though fully set forth at length herein.

80.     As set forth herein, the Plaintiff materially relied on S&T Bank's promises and assurances it would underwrite the credit of Fairbrother and Sofranko including the determination they had sufficient income to pay their proportionate share of the monthly expenses of the property including the monthly mortgage.

81.     Further, S&T Bank allowed the appraisal to be inflated because of the cash paid back for the decorator's allowance that should have been escrowed and used to improve the property to support the appraisal, the appraisal being inflated for the $216,000 forfeited hand money, and the intentional delay in performing the appraisal to allow another unit to close to falsely support a higher value.

82.     Further, S&T Bank should never have made a loan at all because their own appraiser it hired stated in the appraisal that the market value of the properties in the neighborhood were declining in value including the purchased unit. Such a statement makes it impossible to set a value on the property which is the legally required basis from which a bank can make a loan.

83.     Upon information belief, Mr. Lazor made the false representations to Plaintiff about the credit worthiness of Sofranko and Fairbrother and committed the wrongful acts surrounding the appraisal and closing to collect commissions, bonuses and/or improve his standing with S&T Bank for closing on an almost $1 million loan.

84.     The guaranty signed by the Plaintiff includes a provision for the confession of judgment against Plaintiff without prior notice and without regard to

16

whether there was any default in any obligation owed to S&T Bank in the underlying debt.

85.     Such confession of judgment provisions are in violation of the constitutional rights of the Plaintiff and are a violation of Florida law.

86.     This action is filed under the Florida Declaratory Judgments Act, F.S.A. §§ 86.011, etc., the provisions of which are incorporated herein by reference.

87.     There is a bona fide dispute between the parties.

88.     The Plaintiff has a justiciable question as to the enforceability of the guaranty and his rights and obligations thereunder.

89.     The Plaintiff is in doubt as to his rights and obligations under the guaranty.

90.     There is a bona fide, actual, present need for a declaration of the Plaintiff's rights, obligations and enforceability of the guaranty.

91.     A declaratory judgment in this case will serve to grant relief to Plaintiff from the provisions of the guaranty and Defendant's claim in the demand notice.

WHEREFORE, the Plaintiff, Frank R. Zokaites, demands the entry of a declaratory judgment to determine the following:

(a) That the loan is void;

(b) That the guaranty by the Plaintiff is void;

(c) That the guaranty by the Plaintiff is not enforceable;

(d) That the confession of judgment provisions in the Guaranty are void or voidable and not enforceable against the Plaintiff; and

(e) That the Court grant such other or additional relief as it deems necessary and proper.

17

Respectfully submitted,

_____
Frank R. Zokaites, *Pro Se*

c/o Courtyard Villa
4312 El Mar Drive
Fort Lauderdale, FL 33308
(412) 889-5744
frz@comcast.net

Date:   December 16, 2010

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**FRANK R. ZOKAITES,**

       Plaintiff,

  vs.

**S&T BANCORP, INC.**

       Defendant.

_____/

## JURY TRIAL DEMAND:

The Plaintiff demands a trial by jury in this action.

Frank R. Zokaites, *Pro Se*



**GRENEN & BIRSIC, P.C.**
ATTORNEYS AT LAW
ONE GATEWAY CENTER, NINTH FLOOR
PITTSBURGH, PENNSYLVANIA 15222

TEL (412) 281-7650   FAX (412) 281-4398

March 1, 2010

James F. Grenen
jgrenen@grenenbirsic.com



**Via Certified Mail, Return Receipt Requested
and First Class U.S. Mail**

Sonata Florida LLC
375 Golfside Drive
Wexford, PA 15090

Attention:     Frank R. Zokaites, Member
               Jay Fairbrother, Member
               Ronald A. Sofranko, Member

Re:     Sonata Florida LLC S&T Bank July 30, 2008 $864,000 Promissory Note ("Loan")

Gentlemen:

Please be advised that this firm represents S&T Bank in connection with the above-referenced Loan. As you should be aware, this Loan is in default for the Borrower's failure to make payments when due for January 30, 2010 and February 28, 2010. This letter shall constitute formal written notice of this default to Sonata Florida LLC, as Borrower, and to Ronald A. Sofranko, Frank R. Zokaites and Jay Fairbrother, as Guarantors of this Loan. Please be advised that the entire unpaid principal balance of this Loan, together with all accrued interest and all other sums owing thereunder, is immediately due and payable. In addition, please be advised that interest shall begin to accrue on the above Loan at the Interest After Default rate. The total outstanding principal, interest and other charges due and owing on the Loan, as of February 28, 2010, is itemized as follows:

|                       |              |
|-----------------------|--------------|
| Principal             | $843,413.59  |
| Interest              | $   8,995.94 |
| Late and Other Charges| $      716.52 |
| Total:                | $853,126.05  |

This Loan must be paid in full, including all principal, interest, late and other charges, attorney's fees and costs within ten (10) days from the date of this letter.



EXHIBIT
A

GRENEN & BIRSIC, P.C.

Sonata Florida, LLC
March 1, 2010
Page 2


The failure to pay this Loan in full will cause S&T Bank to exercise all available rights and remedies to recover the outstanding indebtedness from the Borrower and/or Guarantors. Please feel free to contact the undersigned or Darren P. Bryan, Vice President of S&T Bank, upon your receipt of this letter.

Very truly yours,

James F. Grenen


JFG/kjb

cc:   Darren P. Bryan (via facsimile)
      Ronald A. Sofranko (via Certified Mail, Return Receipt Requested & First Class U.S. Mail)
      Frank R. Zokaites (via Certified Mail, Return Receipt Requested & First Class U.S. Mail)
      Jay Fairbrother (via Certified Mail, Return Receipt Requested & First Class U.S. Mail)